[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 Procedural History
The plaintiffs, David Fallstrom and Robert Overton, filed a complaint on April 28, 1999, alleging in four counts that the defendant, L.K. Comstock Co., Inc. (Comstock), violated General Statutes § 31-51u
and the plaintiffs' common law right to privacy by revealing Fallstrom's (counts one and two) and Overton's (counts three and four) drug test results to other people. Generally, the complaint alleges that, pursuant to General Statutes § 31-51u, an employer is required to confirm a positive drug test result with a second drug test before revealing the test result to anyone other than the test taker (counts one and three.) The complaint further alleges that the illegal disclosure by Comstock of the plaintiffs' test results is highly offensive to a reasonable person and therefore, invades the plaintiffs' common law right to privacy (counts two and four.) CT Page 1187
On September 6, 2000, Overton[1] filed a motion for summary judgment as to liability on the ground that there is no genuine issue of material fact regarding Comstock's violation of General Statutes § 31-51u as alleged in count three, and as to Comstock's violation of Overton's privacy as alleged in count four.[2]
On September 20, 2000, Comstock filed an objection to Overton's motion for summary judgment. Comstock also filed a cross motion for summary judgment as to all counts of the complaint on the ground that there is no genuine issue of material fact concerning Comstock's compliance with General Statutes § 31-51u and that it did not invade Overton's privacy.[3]
 DISCUSSION
"[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law; D.H.R. Construction Co. v. Donnelly, 180 Conn. 430,434, 429 A.2d 908 (1980); and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book § 331 [now § 17-46]. . . . Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105,639 A.2d 507 (1994). Hertz Corp. v. Federal Ins. Co., 245 Conn. 374,380-81, 374 A.2d 820 (1998). (Internal quotation marks omitted.) Riverav. Double A Transportation, Inc., 248 Conn. 21, 24-25, 727 A.2d 204
(1999)." (Citations omitted; internal quotation marks omitted.) Appletonv. Board of Education, 254 Conn. 205, 209, 757 A.2d 1059 (2000).
 A. Statutory Violation
In his complaint, Overton alleges that Comstock violated General Statutes § 31-51u by revealing Overton's drug test results to other Comstock employees.[4] Overton argues that the statute requires an employer to confirm a positive drug test result with a second drug test before the employer can reveal the positive test result to someone other than the test taker. Overton submits the affidavit of Anthony Soter, the union steward, and his own affidavit as proof that Overton's drug test result was revealed Lo persons other than Overton. Soter's affidavit attests as to who was present when Soter was informed of Overton's test results[5] and who was present in the office trailer when Overton was CT Page 1188 told he had failed the drug test.[6] Because Overton refused a second drug test, he argues that Comstock violated General Statutes § 31-51u
by revealing the positive test results to others.
Comstock asserts that General Statutes § 31-51u was not violated by revealing Overton's drug testing results to its supervisory employees.[7]
Comstock argues that the plain language of the provisions of Connecticut's drug test statute, overall, confirms that revealing Overton's drug test results to supervisory employees is not a violation of General Statutes § 31-51u.
While there is Connecticut legislation governing drug testing, the court was unable to find any cases interpreting General Statutes §31-51u. "Statutory construction is a question of law. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) Cotto v. United Technologies Corp.,251 Conn. 1, 6, 738 A.2d 623 (1999).
"As with any issue of statutory interpretation, our initial guide is the language of the statute itself." (Internal quotation marks omitted.)Peabody N.E., Inc. v. Dept. of Transportation, 250 Conn. 105, 122,735 A.2d 782 (1999) General Statutes § 31-51u provides in pertinent part: "(a) No employer may determine an employee's eligibility for promotion, additional compensation, transfer, termination, disciplinary or other adverse personnel action solely on the basis of a positive urinalysis drug test result unless (1) the employer has given the employee a urinalysis drug test, utilizing a reliable methodology, which produced a positive result and (2) such positive test result was confirmed by a second urinalysis drug test, which was separate and independent from the initial test . . . . (b) No person performing a urinalysis drug testpursuant to subsection (a) of this section shall report, transmit ordisclose any positive test result of any test performed in accordancewith subdivision (1) of subsection (a) of this section unless such testresult has been confirmed in accordance with subdivision (2) of saidsubsection (a)." (Emphasis added.)[8] The affidavit of Anthony Soter in support of Overton's motion for summary judgment provides that Ken Spodnik, the general foreman, Al Stasko, another foreman, and Anthony Soter, the union steward, were present when Mike Williams, the superintendent on the job, announced Overton's test results in Overton's absence. The affidavits of both Anthony Soter and Robert Overton provide that Mike Williams, the superintendent on the job, announced Overton's CT Page 1189 test results again and the test results of Fallstrom and another employee in the presence of Anthony Soter, Ken Spodnik, Al Stasko, Robert Overton, David Fallstrom, and the other employee who had failed the drug test. Comstock does not provide any contrary evidence as to who was present at the times of disclosure, rather it asserts that the privacy protections included in § 31-51u only apply to disclosure by the employer to non-employees.
"[I]f the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent." (Internal quotation marks omitted.)Office of Consumer Counsel v. Dept. of Public Utility Control,246 Conn. 18, 29, 716 A.2d 78 (1998). In this case, the plain and unambiguous statutory language does not carve out any exceptions with respect to the statutory mandate of nondisclosure.[9]
Comstock fails to provide a legislative history or any specific reference to parts of the legislative history in support of its assertion that the legislature's intent was to allow the disclosure of an employee's test result to other employees before performing a confirmation test. The court, however, looked at the legislative history from the inception of the legislation to the present and found that the history supports this court's conclusion that the legislative intent was to protect an individual's privacy. For example, the legislative history of House Bill No. 5056, the bill eventually enacted as Public Acts 87-551 and codified at General Statutes §§ 31-51t through 31-51aa, "provides for confidentiality of test results. Stating that the tests may not be used in a criminal proceeding and indicating that they shall be subject to the same confidentiality that medical records enjoy under existing law, pursuant to Section 1-19b [now §§ 31-128a through 31-128h] of the Connecticut General Statutes, which indicates that they are personnel or medical records the disclosure of which would constitute an invasion of personal privacy." 30 S. Proc., Pt 14, 1987 Sess., p. 5062. This part of the public act was codified at General Statutes § 31-51w.[10]
Representatives voiced concern about employee and prospective employee confidentiality in the workplace when considering House Bill 5056. Representative Kiner discussed additions to the bill added by the Labor Committee pertaining to confidentiality. "The prospective employee would be given information: 1) That he, in fact was going to be tested, 2) that he, in fact, was found positive, and 3) the confidentiality of the reportwould be kept so that he would not find himself on a black roll list ofany type." (Emphasis added.) 30 H.R. Proc., Pt. 31, 1987 Sess., p. 11381. When discussing the type of drug test to be used to test employees, Representative Adamo stated: "We do not want to ruin anemployee's reputation. We don't want someone whispering in someone else'sCT Page 1190ear: Hey. so and so was found to have drugs in his urine, because we would be the one who could say it, and no one can take action against this employee until it is reconfirmed by the very best test." (Emphasis added.) 30 H.R. Proc., Pt. 31, 1987 Sess., p. 11387-88. Representative Gelpsi stated: "I watched a 15 year employee that never had a problem in that plant be brought into ISID. Did the company harass her? Absolutely not, in ten or fifteen minutes, they were absolutely sure that the problem was erroneous. But that isn't where it ended, because the peopleknew on the floor that she was brought into ISID. They found out that shewas there because she was being questioned about drugs, and 300 peopleare looking at you and in fact, even start to question whether [she] wasselling drugs. Is there a problem? Yes, there is a problem, I don't think we are addressing it." (Emphasis added.) 30 H.R. Proc., Pt 31, 1987 Sess., p. 11401-02.
Senate House Bill No. 7211, the bill eventually enacted as Public Acts 91-271 and codified at General Statutes § 31-51u (2), "strengthens the language for privacy with relation to no urinalysis results being transmitted until they have been confirmed in the appropriate manner under the statute. . . ." 34 H.R. Proc., Pt. 16, 1991 Sess., p. 5887. The bill made "the most important clarification, that being one strict confidentiality and two, making sure that the question of reasonable suspicion was addressed." 34 H.R. Proc., Pt. 16, 1991 Sess., p. 5896. The bill "makes it clear that until there is a definitive finding . . . which means two tests, affirmatively finding the presence of drugs that an adverse personnel action could not be taken, nor may a disclosure of thatinformation be made until in fact the two tests are both affirmativelyreturned." (Emphasis added.) 34 S. Proc., Pt. 8, 1991 Sess., p. 2632.
The legislative history of General Statutes §§ 31-51t through 31-51aa
illuminates the policy consideration of maintaining an employee's privacy and that the legislative history indicates that the issue of other employees knowing of an employee's drug test result was contemplated when enacting § 31-51u.
Comstock argues that the ambiguity concerning the interpretation of § 31-51u is created by statutes regarding the keeping of and access to personnel and medical files, i.e. General Statutes §§ 31-128a
through 31-128h. Specifically, Comstock argues that to bolster its analysis of General Statutes § 31-51u, attention should be given to General Statutes § 31-51w which provides in relevant part: "(b) Any results of urinalysis drug tests conducted by or on behalf of an employer shall be maintained along with other employee medical records and shall be subject to the privacy protections provided for in section 31-128a to31-128h, inclusive. . . ." Comstock then argues that General Statutes § 31-128f allows for the disclosure of an employee's test result to CT Page 1191 any employee but not to a third party.
Connecticut General Statutes § 31-128f provides in relevant part: "No individually identifiable information contained in the personnel file or medical records of any employee shall be disclosed by an employer toany person or entity not employed by or affiliated with the employer
without the written authorization of such employee. . . ." (Emphasis added.) "[I]f the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent." (Internal quotation marks omitted.) Office of Consumer Counsel v. Dept. of Public Utility Control, supra, 246 Conn. 29. This statute is clearly providing that an employee must give authorization for a third party to receive that employee's medical information. It does not say that any employee can have the results of a first drug test. If the legislature meant for any employee to have access to an employee's drug test results, then the legislature would have stated its intention plainly and unambiguously. If the court were to construe the statute in the manner that Comstock suggests, §31-51u would directly contradict § 31-128f, thus thwarting the legislature's intended purpose of keeping an employee's test result confidential until a confirming test can be performed. "Statutes are to be construed in a manner that will not thwart [their] intended purpose or lead to absurd results. . . ." (Citation omitted; internal quotation marks omitted.) Commission on Human Rights Opportunities v. SullivanAssociates, 250 Conn. 763, 778, 739 A.2d 238 (1999). By looking at the plain unambiguous language of General Statutes § 31-51u, § 31-51w, and § 31-128a through § 31-128h, the court cannot conclude that the legislature intended for a supervisory employee to have knowledge of an employee's drug test result before a confirmation test could be performed. Instead, the court finds that § 31-51u does not allow the disclosure of confidential test results to any employee before performing a confirmation test.
"The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. . . ." Appleton v. Board of Education of Stonington, supra,254 Conn. 209. Because there is no genuine issue of material fact concerning whether Comstock violated General Statutes § 31-51u, Overton has satisfied his burden and his motion for summary judgment as to General Statute § 31-51u is granted.
Comstock filed a cross motion for summary judgment on the ground that there is no genuine issue of material fact regarding Comstock's compliance with General Statutes § 31-51u as alleged in count three. For the foregoing reasons, Comstock has failed to carry its burden to CT Page 1192 show that it did not violate General Statutes § 31-51u by disclosing Overton's test results to other employees. Accordingly, Comstock's motion for summary judgment as to General Statutes § 31-51u is denied.
 B. Invasion of Privacy
Overton alleges "that the illegal disclosure by Comstock of plaintiff's urinalysis test result is highly offensive to a reasonable person", and therefore, Comstock has violated Overton's common law right to privacy. Overton argues that the collection and testing of urine intrudes upon employee's privacy interests. He further argues that "[a]n employer which disregards the clear statutory mandate against disclosing information to others about an employee's drug test results violates the employee's common law privacy rights by intruding unreasonably upon the employee's seclusion."
Comstock asserts that "the Plaintiffs allege that the Defendant invaded their privacy by publicly disclosing private facts about them. . . ." Comstock asserts that "the Plaintiffs do not know who disclosed the information . . . and cannot claim that the Defendant circulated or made known to the general public that the Plaintiffs failed their drug tests," and therefore, Comstock did not violate Overton's common law right to privacy. Comstock argues that "a tort action for invasion of privacy is triggered by the public disclosure of any matter that would be highly offensive to a reasonable person, and is not of legitimate concern to the public" and therefore, Overton "will need to establish that Comstock caused an unreasonable publicity in his private life to sustain this cause of action." (Emphasis in original.)
The existence of an invasion of privacy action was first recognized in Connecticut in Goodrich v. Waterbury Republican-American, Inc.,188 Conn. 107, 128, 438 A.2d 1317 (1982). In Goodrich, the Supreme Court states that "the law of privacy has not developed as a single tort, but as a complex of four distinct kinds of invasion of four different interests of the plaintiff, which are tied together by the common name, but otherwise have almost nothing in common except that each represents an interference with the right of the plaintiff to be let alone." Id., 127-128. "The four categories of invasion of privacy are set forth in 3 Restatement (Second), Torts 652A [(1977)] as follows: (a) unreasonable intrusion upon the seclusion of another; (b) appropriation of the other's name or likeness; (c) unreasonable publicity given to the other's private life; and (d) publicity that places the other in a false light before the public." Id., 128. Comments to the section of the Restatement adopted by the Supreme Court in the Goodrich case state that one who "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns is subject to liability to the CT Page 1193 other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts, § 652B (1977). Tapia v. Sikorsky Aircraft Division, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 327761 (May 28, 1998,Stodolink, J.); Schwartz v. Royal, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 553218 (May 20, 1996,Hennessey, J.).
"The plaintiffs' affidavits support an intentional . . . intrusion by the defendant's employees upon the private affairs or concerns of the plaintiffs. . . . Whether that intrusion is `highly offensive to a reasonable person' is for a jury to decide. . . ." Rafferty v. HartfordCourant Co., 36 Conn. Sup. 239, 240-41, 416 A.2d 1215 (1980); see alsoFlowers v. New Britain General Hospital, Superior Court, judicial district of Hartford at Hartford, Docket No. 393885 (June 13, 1994,Hennessey, J.) (9 C.S.C.R. 699, 700) (same); Mashantucket Pequot Tribev. State of Connecticut, Superior Court, judicial district of New London at Norwich, Docket No. 101113 (August 19, 1994, Hendel, J.) (same). Because there is a genuine issue of material fact as to whether Comstock's violation of General Statutes § 31-51u is highly offensive to a reasonable person, the court must deny Overtons motion for summary judgment as to his common law invasion of privacy claim as alleged in count four.
Comstock argues that it would have had to publicly disclose Overton's test results in order for a claim of invasion of privacy to be sustained. When citing to case law,[11] Comstock overlooks the fact that Overton is not alleging an invasion of privacy claim that would require public disclosure, such as "unreasonable publicity given to the other's private life" or "publicity that places the other in a false light before the public," but instead is claiming that Comstock made an unreasonable intrusion upon his seclusion. In the present case, Overton alleges an "unreasonable intrusion" violation of privacy, which does not require information to be dispersed publicly or that unreasonable publicity be given to Overton's private life. Because public disclosure is not required for a claim of unreasonable intrusion to be made, Comstock's cross motion for summary judgment as to Overton's invasion of privacy claim as alleged in count four is denied.
 CONCLUSION
For the foregoing reasons, Overton's motion for summary judgment as to General Statutes § 31-51u as alleged in count three as to liability only is granted. Overton's motion for summary judgment as to his common law invasion of privacy as alleged in count four as to liability only is denied. Comstock's cross motion for summary judgment as to General CT Page 1194 Statutes § 31-51u as alleged in count three is denied. Comstock's cross-motion for summary judgment as to the common law invasion of privacy as alleged in count four claim is denied.
CHASE T. ROGERS, JUDGE